YELVERTON, Judge.
The appellant, Caralee Ann Beverly Sampson, appeals the trial court’s judgment terminating her parental rights to her son, John Henry Sampson. We affirm.
John Henry Sampson was born on September 2, 1981, to appellant and John Phillip Sampson. The child came into the care of the Department of Health and Human Resources, Office of Human Development, in Iberia Parish in October 1981. This placement occurred after an investigation of a report of physical abuse. The child was placed in the foster home of Mr. & Mrs. John Trueblood in New Iberia, Louisiana, where he remained, except for an unsuccessful one month placement with a relative, and an aborted trial placement with his parents in April 1983. The child was declared legally abandoned by his father April 5, 1988.
The State of Louisiana brought these proceedings pursuant to LSA-R.S. 13:1600 et seq. for the termination of appellant’s parental rights. After a trial, the court granted the State’s petition. The trial judge’s well written opinion, which we now quote, accurately sets forth the State’s burden of proof, and describes the evidence presented at trial on behalf of the State:
The State has the burden of proving the existence of all of the conditions of the statute by clear and convincing evidence. LSA R.S. 13:1603(A). The prerequisite conditions of 1601(D), under which subsection the court finds that the State has sustained its burden, are as follows:
(1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent’s abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, *315 and the department recommends that it would not be in the best interest of the child to be reunited with his parents.
Additionally, the State must further prove that the best interest of the child dictates termination of parental rights. LSA R.S. 13:1602(D). The court finds that the State has carried that burden as well.
Testifying for the State in this matter were the following employees of the Department of Health and Human Resources, Office of Human Development: Stephanie Leleux (Iberia Parish), the crisis intervention worker who investigated and validated the original complaint of physical abuse; Lucinda Roberts, supervisor of Foster Care during the entire period; Janet Guins (Iberia Parish), Marla Rader (St. Mary Parish), Kathy Jackson (Terrebonne Parish), Roy Reynolds (Terrebonne Parish), Pamela Jack (La-Fourche Parish), Patricia Mitchell (St. Mary Parish), and Mary Ethridge (Iberia Parish), all of whom served as Family Service Workers for the mother at her various locations from the original removal in October of 1981 until the present; and Sharon Courville, Nancy Keller and Carmen Nicholson (all Iberia Parish), all of whom served as Foster Care Workers for the child. Also testifying was Caralee Sampson, the mother. Admitted into evidence was a May 28, 1985 report of a psychological study of the child conducted by Henry J. LaGarde, PhD.
1. 1601(D)(1)
It is not disputed that John Henry Sampson was removed from his parents pursuant to an instanter order dated October 31, 1981. His custody was placed in the State, after hearing, on November 5, 1981. He has remained in the custody of the State since that date.
2. 1601(D)(2)
Although Caralee Sampson denies that she ever abused her child, the original complaint of physical abuse was validated at the time. The child had sustained a broken right leg for which Caralee Sampson had an implausible explanation. Witnesses testifed that she screamed at and struck her baby. There had been previous medical consultations for bruises which could not be explained. The original crisis intervention worker, Stephanie Leleux, confirmed these facts by her testimony at this trial.
3.1601(D)(3)
At this hearing the Court heard the testimony of the nine Family Service workers who were assigned, during the past seven years, the job of working with Caralee Sampson. All of their contracts with her were similar and contained these three requirements: 1) a stable living situation, 2) attendance at parenting classes, and 3) psychological evaluation and treatment. Their testimony about her success in meeting the requirements was similar. Caralee Sampson never succeeded at maintaining stable living quarters but moved to twenty some different places in Iberia Parish, Terre-bonne Parish and St. Mary Parish, Louisiana and went to Texas and Michigan as well. She did adhere to the second and third requirements to a certain degree; she would attend the classes and keep mental health appointments when she stayed in one place long enough to do so. But her nomadic lifestyle effectively prevented any successful results from this assistance.
In 1981 Caralee did not have the basic skills required to parent. It is the testimony of the Family Service Workers that she still has not acquired them. They testified that she was unable to manage herself or her household. After her twins were born two years later, it was apparent that she could not manage them either. The visits with John Henry were chaotic and revealed no affection between the mother and her son. After seven years of efforts on the part of the State, it is reasonable to conclude that there is no reasonable expectation that she will improve either her capabilities or her relationship with her son.
Caralee Sampson testified for the court. She expressed a desire to have John Henry, as well as the twins and her *316 newest baby who have been removed from her by the State of Michigan, returned. However, it was apparent to the Court that she has, in her mind, rewritten the history of the past seven years. She has attained little understanding of the problems of raising children. The testimony of the workers about her poor grasp of reality became very believable.
Counsel for Caralee Sampson attempted to establish by his questioning that this is a case of social and economic deprivation. However, the testimony satisfied the court that she was provided with assistance beyond the usual and consistently failed to take advantage of it. It is apparent that she is either unable, because of her own psychological makeup, or unwilling to do so.
4. 1601(D)(4)
John Henry came into care because of a validated claim of abuse. The testimony in this manner was a tale of frustration. The seven Family Service Workers were diligent and caring but were unable to generate any consistent cooperation from Caralee Sampson towards changing the behavior which led to the abuse. A placement was attempted; the Sampsons violated the terms. It is clear to the court that every reasonable effort to unite the family has been made.
The court is also of the opinion that it would not be in the best interests of John Henry for him to be returned to his unstable mother. There are strong indications that it would even be dangerous.
5. 1602(D)
John Henry has been with the same foster family for the past seven years. The report of Dr. Henry LaGarde, which was introduced into evidence, finds that he is bonded to his foster parents and has no bonding with his natural parents. The testimony of his three foster care workers is strong corroboration for this opinion. The court is of the opinion that this child is entitled to the continuity and stability of a permanent home; that is only possible if termination is effected. It is in the best interest of this child.
Finding, as the trial court did, that the State has met its burden of proof by clear and convincing evidence, we affirm the trial court’s judgment, costs of court to be borne by the appellant.
AFFIRMED.